## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Elba Maria Vasquez Cruz, Ana Rodriguez, and Felicia Reyes, individually, and on behalf of all other similarly situated individuals, and the Proposed Minnesota Rule 23 Class,<br><br>   Plaintiffs,<br><br>v.<br><br>TMI Hospitality, Inc.; TMI Employee Management, Inc.; and TMI Property Management, Inc.,<br><br>   Defendants. | Case No. 14-cv-1128 (SRN/FLN)<br><br><br><br><br>**MEMORANDUM OPINION AND ORDER** |

J. Ashwin Madia and Joshua A. Newville, Madia Law LLC, 345 Union Plaza, 333 Washington Avenue North, Minneapolis, Minnesota 55401, for Plaintiffs.

Sara G. McGrane and Grant T. Collins, Felhaber Larson, 220 South Sixth Street, Suite 2200, Minneapolis, Minnesota 55402, for Defendants.

SUSAN RICHARD NELSON, United States District Judge

## I. INTRODUCTION

This matter is before the Court on Plaintiffs' Motion for Rule 23 Class Certification [Doc. No. 53] and Defendants' Motion to Decertify the Conditionally Certified Class [Doc. No. 60]. For the reasons stated below, Plaintiffs' Motion is granted in part and denied in part, and Defendants' Motion is denied.

## II.     BACKGROUND

### A.      Procedural Background

The procedural background of this case is well documented in the Court's October 14, 2015 Memorandum Opinion and Order on Defendants' Motion for Summary Judgment [Doc. No. 101] ("Summary Judgment Order") and is incorporated herein by reference. Briefly stated, this lawsuit arises from Plaintiffs' employment as housekeepers at the Fairfield Inn & Suites Bloomington (the "Fairfield").  (See First Am. Compl. [Doc. No. 67] ¶ 10.)  There are three named plaintiffs who seek to represent a class of Fairfield housekeepers:  Elba Maria Vasquez Cruz, Ana Rodriguez, and Felicia Reyes (the "Named Plaintiffs").  Defendants TMI Hospitality, Inc., TMI Employee Management, Inc., and TMI Property Management, Inc. develop and operate hotels, including the Fairfield.

The Named Plaintiffs filed this lawsuit on April 15, 2014, asserting five causes of action:  overtime, minimum wage, and recordkeeping violations under the Fair Labor Standards Act ("FLSA") (Count I), (see id. ¶¶ 62–69); minimum wage, gratuities, meal and rest break, and recordkeeping violations under the Minnesota Fair Labor Standards Act ("MFLSA") (Count II), (see id. ¶¶ 70–77); unlawful deduction violations under Minnesota Statutes § 181.79 (Count III), (see id. ¶¶ 78–82); breach of contract and conversion under Minnesota common law (Count IV), (see id. ¶¶ 83–94); and national origin discrimination under the Minnesota Human Rights Act ("MHRA") (Count V), (see id. ¶¶ 95–99).

Between April 29 and June 20, 2014, Maria Montano, Antonia Chepetla Cortes, Juana Reyes, and Marta Rodriguez a/k/a Yolanda Rocha filed consent forms to join the FLSA action.  (See Notices of Consent Filing [Doc. Nos. 6, 8, 10].)  In August 2014, the

Magistrate Judge granted Plaintiffs' Motion for Conditional Class Certification and approved notice to the following class:  "All current and former housekeepers who worked for Fairfield Inn & Suites Bloomington at any time from April 15, 2011 to the present." (Order dated Sept. 3, 2014 [Doc. No. 29], at 3.)  After notice was sent to the potential class members, three more individuals joined in the FLSA action:  Colleen Collins, Erica Cory, and Gloria Gomez.  (See Notices of Consent Filing [Doc. Nos. 32, 37, 38].)  These seven individuals may be referred to collectively herein as the "Opt-in Plaintiffs" or, together with the Named Plaintiffs, the "FLSA Plaintiffs."

In December 2014, the Named Plaintiffs moved to amend their Complaint to add Count VI, a cause of action under the Minnesota Payment of Wages Act ("MPWA").  (See Pls.' Mem. in Supp. of Pls.' Mot. to Amend the Compl. [Doc. No. 45], at 4–5.)  On March 13, 2015, Plaintiffs filed their Motion for Rule 23 Class Certification as to their state law claims—Counts II, III, IV, and V, and, if they were permitted to amend their Complaint, Count VI.  (See Pls.' Mem. in Supp. of Rule 23 Class Cert. [Doc. No. 56] ("Pls.' Rule 23 Mem."), at 15–16.)  One month later, Defendants filed their Motion to Decertify the Conditionally Certified FLSA Class.  (See Defs.' Mem. in Supp. of Defs.' Mot. to Decertify the Conditionally Certified Class [Doc. No. 62] ("Defs.' Decert. Mem."), at 1.)  The Magistrate Judge then granted Plaintiffs' Motion to Amend the Complaint, and Defendants filed timely objections to that Order, as well as their Motion for Summary Judgment.

On October 14, this Court issued its Summary Judgment Order overruling in part and overruling as moot in part Defendants' Objections, and granting in part and denying in part Defendants' Motion for Summary Judgment.  (Mem. Op. and Order dated Oct. 14, 2015

[Doc. No. 101] ("SJ Order"), at 51.)  The Court concluded that Plaintiffs may proceed to trial on the following:  their FLSA minimum wage and overtime claims in Count I (except for the overtime claims of Opt-in Plaintiff Collins); the MFLSA rest break claims, and the MFLSA meal break claims based on shifts of eight or more hours, in Count II; the common law breach of contract claim in Count IV, to the extent that it is based on unpaid hours worked under 40 per week for which Plaintiffs were not brought below minimum wage (the "doughnut hole hours"), as well as the conversion claim in Count IV; and the Minnesota Statutes § 181.101 claim in Count VI.  (See id. at 50–51.)  Accordingly, the Court will analyze the parties' class certification motions only insofar as they pertain to the surviving claims.

### B.    Factual Background

#### 1.    Fairfield's Housekeepers

As discussed above, this lawsuit arises from Plaintiffs' and the putative Rule 23 class members' employment as housekeepers at the Fairfield.  During the relevant time period, Marjorie Smith was the Fairfield's General Manager, Sonia Ochoa was the Executive Housekeeper, and Maira Torres and Gloria Gomez were Assistant Executive Housekeepers.[1]  (See Madia Decl. in Support of Pls.' Mot. for Rule 23 Class Cert. [Doc. No. 55] ("Madia Rule 23 Decl."), Ex. A (Smith Dep. 7:21-25, 17:25–18:5, 55:15–56:25), Ex. C (Rodriguez Dep. 21:11-12).)  All of Fairfield's housekeepers reported to Ms. Ochoa. (See Madia Rule 23 Decl., Ex. A (Smith Dep. 18:15–19:10, 21:10-19, 24:15–25:10).)  And,

---

[1]      These individuals are not named as defendants in this lawsuit.

4

according to Ms. Smith, all of Fairfield's housekeepers have the same job description and responsibilities, are subject to the same clock-punching and overtime policies, are required to wear the same uniform and attend the same training, and are subject to the same job performance expectations and performance reviews.  (Id., Ex. A (Smith Dep. 21:20–22:20, 38:20–40:12).)  Likewise, all of Fairfield's housekeepers are compensated on an hourly basis at a rate between $8.75 and $9.15 per hour.  (Id., Ex. A (Smith Dep. 38:6-19).)

According to Ms. Smith, Defendants' policies allotted housekeepers 27 minutes to clean each room and a 30-minute lunch break.  (Id., Ex. A (Smith Dep. 49:23-52:5).)  There was no policy regarding rest breaks.  (Id., Ex. A (Smith Dep. 52:10–53:15).)  Thus, because the housekeepers typically were scheduled for seven-hour shifts, they were required to clean between 13 and 14 rooms per shift.  (Id., Ex. A (Smith Dep. 53:16-54:12).)  However, Ms. Ochoa testified that she assigned the housekeepers 16 rooms per shift, and several of the Named and Opt-in Plaintiffs testified that Ms. Ochoa assigned them 18 to 24 rooms per shift.  (Id., Ex. B. (Cruz Dep. 183:6-8), Ex. C (Rodriguez Dep. 9:9-13, 25:7-17, 103:15-18), Ex. D (F. Reyes Dep. 20:3-10), Ex. E (Ochoa Dep. 19:10–20:13), Ex. F (Montano Dep. 85:25–86:12), Ex. G (J. Reyes Dep. 40:8-13, 48:10–49:2).)

### 2. Off-the-Clock Work

At the heart of this lawsuit are Plaintiffs' allegations that they were required to work off the clock and were not compensated for that time.  For example, each of the FLSA Plaintiffs has testified that they had to—or were supposed to—work off the clock prior to punching in for their shifts, folding linens and preparing their cleaning carts.  (See Madia Rule 23 Decl., Ex. B (Cruz Dep. 162:21–163:11, 167:25–168:16, 191:24–192:2), Ex. C

5

(Rodriguez Dep. 18:3-11), Ex. D (Reyes Dep. 29:24–30:2), Ex. F (Montano Dep. 71:5–

72:7), Ex. G (J. Reyes Dep. 45:12–46:10), Ex. L (Gomez Decl. ¶ 3); Collins Aff. in Supp. of

Defs.' Mem. of Law Opposing Pls.' Mot. for Rule 23 Class Cert. [Doc. No. 59] ("Collins

Rule 23 Opp. Aff."), Ex. C-1 (Cory Dep. 22:21–23:9), Ex. D (Cortes Dep. 31:15-25), Ex. E

(Collins Dep. 28:14-18; Collins Aff. in Supp. of Defs.' Mot. for Summ. J. [Doc. No. 90]

("Collins SJ Aff."), Ex. 1 (Rocha Dep. 52:9-13).)  Each of the FLSA Plaintiffs has also

testified that they were frequently required to work off the clock after the end of their

shifts, usually punching out and then continuing to clean rooms.  (See Madia Rule 23

Decl., Ex. B (Cruz Dep. 61:8-18, 192:3-22), Ex. C (Rodriguez Dep. 18:22–19:11, 68:11-14,

91:13-15, 99:24–100:15), Ex. D (Reyes Dep. 85:4-9), Ex. F (Montano Dep. 62:3-15), Ex. G

(J. Reyes Dep. 25:16-18), Ex. L (Gomez Decl. ¶ 4); Collins Rule 23 Opp. Aff., Ex. C-1

(Cory Dep. 45:20-22), Ex. D (Cortes Dep. 36:7-21), Ex. E (Collins Dep. 14:3-5); Collins SJ

Aff., Ex. 1 (Rocha Dep. 61:19-24).)  Once in awhile, they also were required to work entire

shifts without punching in.  (See, e.g., Madia Rule 23 Decl., Ex. B (Cruz Dep. 46:11–

47:24), Ex. C (Rodriguez Dep. 48:20–49:19), Ex. F (Montano Dep. 22:11–24:4).)

   At least six Plaintiffs (Cruz, Rodriguez, Felicia Reyes, Montano, Cortes, and

Gomez) estimated that they worked off the clock, as described above, for at least three

hours per week, and for as much as five to six-and-a-half hours per week.  (See Madia

Rule 23 Decl., Ex. B (Cruz Dep. 169:12-16), Ex. C (Rodriguez Dep. 107:18-22), Ex. D (F.

Reyes Dep. 85:24–86:5), Ex. F (Montano Dep. 94:3-6), Ex. L (Gomez Decl. ¶ 4); Collins

Rule 23 Opp. Aff., Ex. D (Cortes Dep. 87:3-9).)  Opt-in Plaintiff Collins testified that she

worked off the clock anywhere from one-and-a-half hours per week to four-and-a-half

6

hours per week, depending upon whether she was working in the kitchen (where she worked fewer hours off the clock) or housekeeping (where she worked more hours off the clock).  (See Collins Rule 23 Opp. Aff., Ex. C (Collins Dep. 46:6-18).)  Similarly, Opt-in Plaintiff Juana Reyes testified that she worked between forty-five minutes and two hours and fifteen minutes off the clock in any given week.  (See Madia Rule 23 Decl., Ex. G (J. Reyes Dep. 43:21–44:11).)

### 3.    Rest and Meal Breaks

Several housekeepers provided testimony regarding the rest and meal breaks that they took while working for Defendants.  As for rest breaks, Named Plaintiff Rodriguez testified that, although she was never told that she was not allowed to go to the bathroom, she was only able to take restroom breaks when she had time and not as needed.  (Madia Rule 23 Decl., Ex. C (Rodriguez Dep. 87:20–90:5).)  Named Plaintiff Cruz testified that, if she had to use the restroom, she had to "really quickly" use the bathroom in the guest room she was cleaning.  (Id., Ex. B (Cruz Dep. 187:18–188:3).)  Similarly, Opt-in Plaintiff Rocha said that, although she usually used the bathroom in the guest room that she was cleaning when she had to use the restroom, "[s]ometimes we were running so hard that we didn't even drink water so you didn't even feel like you had to go to the bathroom."  (Collins SJ Aff., Ex. 1 (Rocha Dep. 39:1-20).)  And, Opt-in Plaintiff Montano testified that "[Ms. Ochoa] would push me more and push me more and push me more and just give me this extreme amount of rooms."  (Madia Rule 23 Decl., Ex. F (Montano Dep. 29:9-11).)  Both Rocha and Montano testified that Ms. Ochoa would not give them a break.  (Collins SJ Aff., Ex. 1 (Rocha Dep. 41:24–42:4); Madia Rule 23 Decl., Ex. F (Montano Dep. 29:11).)

7

On the other hand, Named Plaintiff Felicia Reyes testified that she never had a problem using a restroom during the day because Ms. Ochoa and Ms. Torres told her that she could use the bathroom in the guest room she was cleaning.  (See Madia Rule 23 Decl., Ex. D (F. Reyes Dep. 71:16–73:3).)  Similarly, several housekeepers have submitted sworn declarations stating that they were never told that they could not take a restroom break and that they did, in fact, use the restroom.  (See, e.g., Collins Rule 23 Opp. Aff., Ex. A, at 5 (Second Flores Decl. ¶ 9), 8 (Second Ibarra Decl. ¶ 11), 20 (Perez Decl. ¶ 3).)

As for meal breaks, Opt-in Plaintiff Juana Reyes testified that she was always able to take a lunch break, but that the breaks were "as fast as possible and usually less than half an hour."  (Madia Rule 23 Decl., Ex. G (J. Reyes Dep. 30:25–31:6, 32:23–33:1).)  And, seven more housekeepers submitted sworn declarations stating that they were never told that they could not take a meal break and that they did, in fact, take meal breaks.  (See Collins Rule 23 Opp. Aff., Ex. A, at 5 (Second Flores Decl. ¶¶ 3, 8), 8 (Second Ibarra Decl. ¶ 10), 13 (Kabba Decl. ¶ 2), 20 (Perez Decl. ¶ 2); Curbelo Aff. [Doc. No. 23], at 2 (Ufredo Decl. ¶ 7), 6 (Martinez Decl. ¶ 7); Second Collins Aff. in Supp. of Defs.' Mem. of Law Opposing Pls.' Mot. for Rule 23 Class Cert. [Doc. No. 82] ("Second Collins Rule 23 Aff."), Ex. 1 (Capelez Decl. ¶ 9).)  However, those housekeepers also stated that they either often did not take a break to eat, took only a fifteen-to-thirty minute break, or ate in the room that they were cleaning.  (See Collins Rule 23 Opp. Aff., Ex. A, at 5 (Second Flores Decl. ¶ 3), 8 (Second Ibarra Decl. ¶ 10), 13 (Kabba Decl. ¶ 3), 20 (Perez Decl. ¶ 2); Curbelo Aff. at 6 (Martinez Decl. ¶ 7); Second Collins Rule 23 Aff., Ex. 1 (Capelez Decl. ¶ 9).)

**C.     Tips**

Plaintiffs also claim that Defendants stole tip money left for them by hotel guests.

Although Defendants do not have a formal policy regarding tips, there is an "understanding"

that money left by hotel guests is for the housekeeper who cleans that room.  (Madia Rule

23 Decl., Ex. A (Smith Dep. 27:25–28:12).)  According to Named Plaintiffs Cruz and

Montano, however, if Ms. Ochoa checked the guest rooms before the housekeepers went

into the rooms, then there either would be no tips or very minimal tips in the rooms.  (See

id., Ex. B (Cruz Dep. 94:24–95:16), Ex. F (Montano Dep. 14:24–15:5, 19:11–20:21).)

Similarly, several Plaintiffs testified that, if Ms. Ochoa had first gone through the rooms,

then they would find thank-you notes from guests crumpled by the garbage can and

unaccompanied by tip money.  (See Madia Rule 23 Decl., Ex. B (Cruz Dep. 89:16-20), Ex.

C (Rodriguez Dep. 122:9–123:18), Ex. D (F. Reyes Dep. 109:10–112:9), Ex. F (Montano

Dep. 51:15–53:1).)  If Ms. Ochoa had not first gone into the rooms, however, then Plaintiffs

Cruz and Montano would receive a greater amount of tips.  (See Madia Rule 23 Decl., Ex. B

(Cruz Dep. 94:24–95:16), Ex. F (Montano Dep. 14:24–15:5, 49:8-18).)  In addition,

although several housekeepers stated that they never saw anyone take tips from their rooms,

(see Madia Rule 23 Decl., Ex. G (J. Reyes Dep. 34:6-7); Collins Rule 23 Opp. Aff., Ex. A,

at 5 (Second Flores Decl. ¶ 11), 8 (Second Ibarra Decl. ¶ 13), 13 (Kabba Decl. ¶ 8), 20

(Perez Decl. ¶ 5); Second Collins Rule 23 Aff., Ex. 1 (Capelez Decl. ¶ 12)), and one

testified that she had no reason to believe that her tips were stolen and did, in fact, receive

five to twenty-five dollars per day in tips, (Madia Rule 23 Decl., Ex. G (J. Reyes Dep.

33:17–34:10)), Montano testified during her deposition that she saw Ms. Ochoa enter a

guest room, take two dollars in tip money, and put it in her bra, (see Madia Rule 23 Decl.,

Ex. F (Montano Dep. 20:22–21:14)).

It appears that at least one housekeeper brought this issue to the attention of a

supervisor.  During her deposition, Opt-in Plaintiff Montano testified as follows regarding a

meeting with Ms. Smith (Fairfield's General Manager), Ms. Ochoa, Ms. Torres, and Opt-in

Plaintiff Gomez:

> And so I spoke with [Gomez] and [Torres].  And I asked, "Well, why aren't
> they respecting us?"  Because they would ask us to punch in before finishing
> the rooms, and they made us work before punching in in the morning.  And
> they would take our tips, because they would check the rooms before we
> would open them. . . . And so I told all of that to [Smith].  I said it all in front
> of them.  And [Smith] said, "Why are you doing that?  Why are you doing all
> of those things?  You have to respect the housekeepers."  And [Ochoa] said,
> "Well, I take the orders from Kevin."

(Id., Ex. F (Montano Dep. 12:19–13:10).)

## III.   DISCUSSION

### A.    Plaintiffs' Motion for Rule 23 Class Certification

The Named Plaintiffs seek Rule 23 class certification of their state law claims, which

include claims for meal and rest break violations under the MFLSA (Count II), breach of

contract and conversion (Count IV), and violation of § 181.101 of the MPWA (Count VI).

(Pls.' Rule 23 Mem. at 15.)  They request that the Court appoint them as class

representatives and their counsel as class counsel, (see id. at 22), for the following class:

> All current and former housekeepers who work(ed) for Fairfield Inn & Suites
> Minneapolis Bloomington from April 15, 2011 to present.

(Id. at 16.)

10

The Court has broad discretion in determining whether class certification is appropriate, and "[t]his discretion extends to defining the scope of the class." Shapiro v. Midwest Rubber Reclaiming Co., 626 F.2d 63, 71 (8th Cir. 1980) (citations omitted). Likewise, "[w]hen appropriate, an action may be brought or maintained as a class action with respect to particular issues." Fed. R. Civ. P. 23(c)(4). "To be certified as a class, plaintiffs must meet all of the requirements of Rule 23(a) [of the Federal Rules of Civil Procedure] and must satisfy one of three subsections of Rule 23(b)." In re St. Jude Med., Inc., 425 F.3d 1116, 1119 (8th Cir. 2005) (citations omitted). In this case, Plaintiffs argue that each of the Rule 23(a) requirements, as well as Rule 23(b)(3), is satisfied.[2] (Pls.' Rule 23 Mem. at 16.)

> Under Rule 23(a):
>
> One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
>
> (1)    the class is so numerous that joinder of all members is impracticable;
>
> (2)    there are questions of law or fact common to the class;
>
> (3)    the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4)    the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). A trial court must engage in "a rigorous analysis" to ensure that these prerequisites are met. Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551

---

[2]    In their First Amended Complaint, Plaintiffs state that they seek class certification under Rule 23(b)(1), (b)(2), and (b)(3). (First Am Compl. ¶ 56.) However, Plaintiffs' Motion and briefing only request certification under Rule 23(b)(3).

(2011) (internal quotation marks and citation omitted).  Under Rule 23(b)(3), a class

action is proper if:

> the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  The matters pertinent to these findings include:
>
> (A)  the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B)  the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C)  the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D)  the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

### 1.      Numerosity

Plaintiffs first argue that they have satisfied the numerosity requirement under

Rule 23(a).  There are a number of relevant factors pertaining to this inquiry.  Paxton v.

Union Nat'l Bank, 688 F.2d 552, 559 (8th Cir. 1982).  The most obvious factor is the size

of the proposed class; however, "[n]o arbitrary rules regarding the necessary size of

classes have been established."  Id. (citation omitted).  "In addition . . . , the court may

also consider the nature of the action, the size of the individual claims, the inconvenience

of trying individual suits, and any other factor relevant to the practicability of joining all

the putative class members."  Id. at 559–60 (citation omitted).  A plaintiff need not

demonstrate that joinder of all potential class members would be "impossible," but rather

that it would be "difficult."  Lockwood Motors, Inc. v. Gen. Motors Corp., 162 F.R.D.

569, 574 (D. Minn. 1995).

Plaintiffs argue that numerosity is satisfied based on the size of the proposed class,

which Defendants' records show to be 67 individuals.  (See Pls.' Rule 23 Mem. at 17.)

In addition, Plaintiffs assert that joinder would be difficult because 27—or 40%—of

those individuals proved through the FLSA notice process to be unreachable by U.S.

Mail, the individuals are mostly Hispanic immigrants who are vulnerable to threats of

retaliation, and the size of the individual claims—which range from $38 to $7,613—is

small.  (See id. at 17–18.)

Defendants, on the other hand, argue that numerosity is not satisfied because there

are far fewer than 67 putative class members.  In particular, Defendants argue that one

potential class member was not, in fact, a housekeeper and so does not satisfy the class

definition.  (Defs.' Mem. of Law Opposing Pls.' Mot. for Rule 23 Class Cert. [Doc. No.

58] ("Defs.' Rule 23 Opp."), at 22.)  Defendants also claim that the proposed class should

be reduced by the 27 putative members who were unreachable by U.S. Mail, the seven

individuals who submitted declarations stating that they have not been threatened and/or

denying Plaintiffs' allegations, and the 20 or so individuals who did receive notice of the

FLSA action but chose not to opt in.  (Id. at 22–24.)  Thus, according to Defendants, the

proposed class consists of only 10—or at most—32 individuals, and this number should

be further reduced by the number of putative class members whose claims fall outside of

the relevant limitations periods.  (See id. at 24–27.)  More specifically, Defendants argue

that the statute of limitations on the breach of contract and MFLSA claims is two years

13

and requires that the class size be reduced by the four individuals whose employment ended on or before April 15, 2012. (Id. at 26.)

The Court agrees with Plaintiffs that numerosity is satisfied in this case. Plaintiffs have reliably estimated—based on Defendants' records—that there are 67 individuals who meet the class definition, and as they point out, a class consisting of 40 or more individuals raises a presumption that joinder is impracticable. See Lockwood Motors, Inc., 162 F.R.D. at 574. Even removing the 27 individuals who were unreachable by U.S. Mail—which Plaintiffs do not seriously take issue with, (see Pls.' SJ Reply at 14)—leaves the potential class at 40 members. And, Defendants' attempts to further reduce this estimate are largely unpersuasive.

First, Defendants' counsel asserts that one of the individuals originally included on the list (provided by Defendants to Plaintiffs) of the individuals who fit the proposed class description has held a different position than housekeeper at the Fairfield since 2002. (Collins Rule 23 Opp. Aff. ¶ 3.) Defendants, however, provide no documentation in support of that statement.

Second, the size of an opt-in FLSA class is not determinative of the size of an opt-out Rule 23 class. See Nerland v. Caribou Coffee Co., 564 F. Supp. 2d 1010, 1031 (D. Minn. 2007) ("[J]oinder of all possible state class plaintiffs has not necessarily occurred through the FLSA collective action."). For example, "[t]here exists the possibility that some current [housekeepers] did not opt into the FLSA action for fear of retaliation, and a state class certification with its opt-out procedures could provide an avenue for additional [housekeepers] to assert their claims without the same level of apprehension that comes

14

from taking affirmative steps to join into the lawsuit." Id.  And here, according to

Defendants, at least seven of the 20 potential class members who chose not to opt in to

the FLSA action are current housekeepers.  (Defs.' SJ Opp. at 24.)  Although Defendants

claim that those individuals submitted declarations in which they swore that no one told

them that they could not participate in this lawsuit or that they deny Plaintiffs'

substantive allegations, those declarations are not so explicit.  As for retaliation, the

declarants state, "No one has coerced me, threatened me, or promised me anything in

exchange for my statement."  (Collins Rule 23 Opp. Aff., Ex. A (emphasis added).)  As

for the substantive allegations, the declarants state, for example, that they were never told

that they could not take a meal break and that they did take meal breaks, but also that they

often did not take a break to eat, took only a fifteen-to-thirty minute break, or ate in the

room that they were cleaning.  (See id.)  Thus, whether those actually "denied" the Named

Plaintiffs' substantive allegation that housekeepers were not given an adequate meal break

under the MFLSA (which requires that an employer permit each employee who is working

an eight-hour shift "sufficient time to eat a meal," Minn. Stat. § 177.254, Subd. 1) is not

clear.

Third, the statute of limitations for the breach of contract and MFLSA claims is

either two years or, if willfulness is established, three years.  Minn. Stat. § 541.07(5)

("[T]he following actions shall be commenced within two years:  . . . for the recovery of

wages or overtime or damages, fees, or penalties accruing under any federal or state law

respecting the payment of wages or overtime or damages, fees, or penalties except, . . . if

the nonpayment is willful and not the result of mistake or inadvertence, the limitation is

three years."); see Kulinski v. Medtronic Bio-Medicus, Inc., 112 F.3d 368, 371 (8th Cir.

1997) ("Minnesota courts consistently hold that 'all damages arising out of the

employment relationship are subject to [§ 541.07(5)].'") (citations omitted).  Willfulness

in this instance is a question of fact for the jury.  See Levin v. C.O.M.B. Co., 441 N.W.2d

801, 805 (Minn. 1989) ("Unlike other statutes of repose, which are designed to dispose of

stale claims summarily, the two tiered limitation provided in section 541.07(5) seems

almost certainly to demand submission of the question of willfulness to the fact finder so

that it can be decided which limitation, two years or three, is applicable.").  Therefore, the

Court will not determine at this stage that the two-year, rather than the three-year, statute

of limitations applies to eliminate certain potential plaintiffs from the class.

Because Defendants are unable to convincingly argue that Plaintiffs' potential

class should be reduced below 40 members, and because those individuals have small

individual claims, the Court finds that joinder of these individuals would be difficult and

that trying the individual lawsuits would be impracticable.  Accordingly, Rule 23(a)'s

numerosity requirement is satisfied in this case.

## 2. Commonality/predominance

Because there is some overlap between Rule 23(a)'s commonality requirement and

Rule 23(b)(3)'s predominance requirement, the Court will address those issues together.

"'Commonality requires the plaintiff to demonstrate that the class members have suffered

the same injury.'"  Luiken v. Domino's Pizza, LLC, 705 F.3d 370, 376 (8th Cir. 2013)

(quoting Dukes, 131 S. Ct. at 2551).  Similarly, the predominance requirement "'tests

whether proposed classes are sufficiently cohesive to warrant adjudication by

representation.'"  Id. at 377 (quoting Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623

(1997)).  This latter inquiry is more demanding than the commonality requirement in that,

"'[w]hen determining whether common questions predominate, a court must conduct a

limited preliminary inquiry, looking behind the pleadings, but that inquiry should be

limited to determining whether, if the plaintiffs' general allegations are true, common

evidence could suffice to make out a prima facie case for the class.'"  Id. (quoting In re

Zurn Pex Plumbing Prod. Liab. Litig., 644 F.3d 604, 618 (8th Cir. 2011)).

　　　　The Supreme Court explained the commonality requirement in Wal-Mart Stores,

Inc. v. Dukes:

> [The plaintiffs'] claims must depend upon a common contention—for
> example, the assertion of discriminatory bias on the part of the same
> supervisor.  That common contention, moreover, must be of such a nature
> that it is capable of classwide resolution—which means that determination
> of its truth or falsity will resolve an issue that is central to the validity of
> each one of the claims in one stroke.
>
> "What matters to class certification . . . is not the raising of common
> 'questions'—even in droves—but, rather the capacity of a classwide
> proceeding to generate common answers apt to drive the resolution of the
> litigation.  Dissimilarities within the proposed class are what have the
> potential to impede the generation of common answers."

131 S. Ct. at 2551 (citation omitted).  In that case, the lower courts approved certification

of a class of current and former female employees of Wal-Mart who alleged that their

supervisors' exercise of discretion regarding pay and promotion matters discriminated

against women in violation of Title VII.  Id. at 2547.  The Supreme Court found that "in

resolving an individual's Title VII claim, the crux of the inquiry is 'the reason for a

particular employment decision,'" and that the plaintiffs sought to sue about millions of

such decisions.  Id. at 2552 (citation omitted).  According to the Court, "[w]ithout some

glue holding the alleged reasons for all those decisions together, it will be impossible to

say that examination of all the class members' claims for relief will produce a common

answer to the crucial question why was I disfavored."  Id.  Pay and promotion decisions

at Wal-Mart were, for the most part, committed to local supervisors' broad discretion, id.

at 2547, and there was no proof of a companywide discriminatory policy, id. at 2556.

Thus, the Court concluded that:

> demonstrating the invalidity of one manager's use of discretion will do
> nothing to demonstrate the invalidity of another's.  A party seeking to
> certify a nationwide class will be unable to show that all the employees'
> Title VII claims will in fact depend on the answers to common questions.

Id. at 2554.

The Eighth Circuit applied Dukes in Luiken v. Domino's Pizza, LLC, a case in

which Domino's Pizza delivery drivers alleged that the delivery charge customers paid to

Domino's was a gratuity wrongfully withheld from them.  705 F.3d at 372.  The relevant

Minnesota statute defined the term "gratuities" to include "an obligatory charge assessed

to customers, guests or patrons which might reasonably be construed by the guest,

customer, or patron as being a payment for personal services rendered by an employee."

Id. (citation omitted).  Because there was not a uniform context in which deliveries

occurred, the Eighth Circuit determined that how a charge is reasonably construed in one

transaction is not necessarily indicative of how it is reasonably construed in another.  Id.

at 376.  The court analogized the facts to those in Dukes and, finding that neither Rule

23(a)'s commonality requirement nor Rule 23(b)(3)'s predominance requirement was met, reversed the district court's class certification order.  Id. at 376–78.

Here, the Named Plaintiffs argue that commonality exists because the following questions of law and fact are common to the class:  "whether TMI required Plaintiffs to work off the clock," "whether TMI paid Plaintiffs for all hours worked," "whether TMI paid class members within the time period required by Minn. Stat. § 181.[1]01," "whether TMI allowed Plaintiffs to take rest and meal breaks as required by MFLSA," and "whether TMI unlawfully took class members' tips."  (Pls.' Rule 23 Mem. at 19–20.) Plaintiffs also argue that these common questions can be answered on a class-wide basis because the allegations relate to the unlawful policies and practices implemented by one supervisor, and that any differences among housekeepers in terms of, for example, how much off-the-clock work they performed is irrelevant to the predominance inquiry because it relates to damages.   (See Pls.' Rule 23 Reply at 9–12.)

In response, Defendants argue that Plaintiffs have merely set forth common "questions," which are insufficient to meet the commonality requirement.  (Defs.' Rule 23 Opp. at 28.)  Instead, Defendants assert, there must be common "answers," which are lacking in this case.  (See id. at 28–29.)  As for Plaintiffs' breach of contract claim, Defendants argue that there is no common evidence of contract formation or breach. (See id. at 29–31.)  Regarding the MFLSA claim, Defendants assert that there is no common policy of requiring housekeepers to miss breaks and that the testimony as to whether they did, in fact, miss breaks and why is varied.  (See id. at 32.)  As for Plaintiffs' conversion claim, Defendants argue that individualized determinations would

be necessary regarding who had a tip taken, the amount of the tip, and whether it was owed to that person.  (See id. at 33–34.)

The Court agrees that Plaintiffs have satisfied the commonality and predominance requirements with respect to their breach of contract and MFLSA claims.  For one thing, all of the proposed class members held the same job (housekeepers), worked at the same location (the Fairfield in Bloomington), and were supervised by the same person (Ms. Ochoa).  Therefore, this case is unlike Dukes and Luiken, where the courts found commonality lacking because the decisionmakers alleged to have committed the violations at issue, or the context in which those alleged violations occurred, were not uniform.

Moreover, the allegations supporting the breach of contract and MFLSA claims are that Defendants had a policy or practice that applied to all proposed class members and deprived them of their contractual or statutory rights.  And, "determination of [the] truth or falsity [of those allegations] will resolve an issue that is central to the validity of each one of the claims in one stroke."   Dukes, 131 S. Ct. at 2551.  For example, Plaintiffs' breach of contract claim (and, consequently, Plaintiffs claim under Minnesota Statutes § 181.101[3]) is dependent upon whether Defendants had a practice of requiring their housekeepers to work off the clock folding linens before clocking in and finishing

---

[3]    As discussed in the Court's Summary Judgment Order, Plaintiffs' § 181.101 claim for a statutory penalty for untimely payment of wages is dependent upon a showing that Plaintiffs have an independent, substantive legal right to the claimed wages.  (SJ Order at 58.)  Thus, should it be determined that Plaintiffs were entitled under an employment agreement to payment for their alleged off-the-clock work, then Plaintiffs also will be entitled to pursue their § 181.101 claim.  (Id. at 50.)

their room-cleaning after clocking out and, therefore, did not compensate the

housekeepers for all hours worked.  That is a question that can be answered on a

classwide basis.  See Bouaphakeo v. Tyson Foods, Inc., 765 F.3d 791, 797 (8th Cir.

2014) (finding no abuse of discretion in certifying a class in a donning-and-doffing case

where the class members worked at the same plant and used similar equipment and were

subject to the same specific company pay policy, even though there was some variation

in the members' donning and doffing routines).

Contrary to Defendants' contentions, the question of contract formation does not

defeat commonality or present individual questions that predominate.  (See Defs.' Rule

23 Opp. at 29–30, 40.)  Plaintiffs do not present any unique arguments regarding their

oral employment contracts, instead asserting simply that they were hired to work as

housekeepers in exchange for an hourly rate of pay,[4] and it appears that such information

could be gleaned from common evidence of Defendants' hiring practices and job

descriptions.  While it is true that there may be individual questions regarding the amount

of time that a particular individual was required to work off the clock or how often the

individual was not paid in a timely manner under § 181.101, those individual issues relate

to damages.  And, liability—not damages—is the focus of the commonality and

predominance inquiries.  See Nerland, 564 F. Supp. 2d at 1035 ("As with the

commonality and typicality requirements, the predominance inquiry is directed towards

---

[4]     Plaintiffs have submitted deposition testimony from each of the Named Plaintiffs
that they were told during their interviews for the housekeeper position that they would
be paid a certain wage.  (See Madia Rule 23 Decl., Ex. B (Cruz Dep. 137:1-14), Ex. C
(Rodriguez Dep. 60:3–61:9), Ex. D (F. Reyes Dep. 43:19–44:16, 74:9-25).)

the issue of liability.").  Nevertheless, the Court will exercise its discretion under Rule

23(c)(4) to bifurcate the issues of liability and damages in this case and to certify, for the

time-being, a liability-only class.  Should there be a finding of liability at trial, the

damages issues will be handled in a separate phase of litigation.

As for their MFLSA claims, Plaintiffs must demonstrate that Defendants did not

allow them "adequate time from work" to use the restroom, Minn. Stat. § 177.253, Subd.

1, or "sufficient time to eat a meal" in an eight-hour shift, id. § 177.254, Subd. 1.  Again,

Plaintiffs' theory is that Defendants had a practice of requiring their housekeepers to

work without receiving those breaks.  (See Pls.' Reply at 11.)  That is a question that can

be answered on a classwide basis through evidence of, for example, Ms. Ochoa's alleged

insistence on maintaining a higher-than-required room-cleaning rate.  (See id.)  Again,

while there may be individual questions as to the number of meal or rest breaks that a

particular individual was denied, that is a damages issue that will be dealt with in a

separate phase of this litigation should there be a finding of liability.

Although Plaintiffs have demonstrated commonality and predominance as to their

breach of contract and MFLSA claims, Plaintiffs have not satisfied those requirements in

regard to their conversion claim.  To prove conversion of their tips, Plaintiffs must

demonstrate that they had a property interest and that Defendants deprived them of that

interest.  See Lassen v. First Bank Eden Prairie, 514 N.W.2d 831, 838 (Minn. Ct. App.

1994) (citing Larson v. Archer–Daniels–Midland Co., 32 N.W.2d 649, 650 (Minn.

1948)).  However, the evidence necessary to prove these elements is not common among

potential class members, and individual questions predominate.

For example, the evidence that class members had a property interest in the first place ranges from one potential class member's testimony that she saw Ms. Ochoa enter a guest room and take tip money to another potential class member's testimony that she never saw anyone take her tips or had reason to believe that her tips were stolen, and that she did, in fact, receive five to twenty-five dollars per day in tips. Similarly, while some housekeepers testified that there would be no tips in their rooms if Ms. Ochoa first checked the rooms, others testified simply that there would be fewer tips in that situation. Still others testified that, if Ms. Ochoa had first gone through the rooms, then they would find thank-you notes from guests crumpled by the garbage can and unaccompanied by tip money. Likewise, this same evidence shows that whether the housekeepers were deprived of a property interest cannot be resolved on a classwide basis because any alleged tip-stealing practice was not applied to every housekeeper and, if it was applied, it was applied inconsistently. In other words, liability on Plaintiffs' conversion claims would have to be resolved on an individual basis.

For these reasons, the Court finds that Rule 23(a)'s commonality requirement and Rule 23(b)(3)'s predominance requirement are met for Plaintiffs' breach of contract, MFLSA, and § 181.101 claims, but not for Plaintiffs' conversion claim. In addition, the Court will bifurcate the issues of liability and damages.

### 3.    Typicality

Typicality is also in dispute in this case. While the burden of demonstrating typicality is not "onerous," a party seeking class certification must show that "the representative is not alone in his or her dissatisfaction." Paxton, 688 F.2d at 562 (citation

23

omitted).  In other words, "Rule 23(a)(3) requires a demonstration that there are other members of the class who have the same or similar grievances as the plaintiff."  Id. (citations and internal quotation marks omitted).  Thus, Rule 23(a)(3) "is generally considered to be satisfied 'if the claims or defenses of the representatives and the members of the class stem from a single event or are based on the same legal or remedial theory.'"  Id. at 561–62 (quoting C. Wright & A. Miller, Fed. Prac. & Proc. § 1764 n.21.1 (Supp. 1982)).  This is true even if there are "[f]actual variations in the individual claims."  Alpern v. UtiliCorp United, Inc., 84 F.3d 1525, 1540 (8th Cir. 1996) (citation omitted).

The Named Plaintiffs argue that typicality is satisfied because—whether the off-the-clock work, meal and rest breaks, and tips practices and policies are determined to be lawful or unlawful—the Named Plaintiffs will be affected in the same way as the other class members.  (Pls.' Rule 23 Mem. at 21.)  Defendants, on the other hand, argue that typicality is not satisfied because some housekeepers have denied that the alleged violations occurred.  (Defs.' Rule 23 Opp. at 35.)

The Court agrees with Plaintiffs that typicality is satisfied in this case, but only as to their breach of contract, § 181.101, and MFLSA claims.  In those claims, the Named Plaintiffs and putative class members are seeking redress of a similar grievance (i.e., that Defendants required housekeepers to work off the clock and failed to pay them for all hours worked, and that Defendants failed to provide housekeepers with adequate rest and meal breaks), under the same legal and remedial theories (i.e., breach of contract, § 181.101, and the MFLSA).  As discussed above, however, the allegations of tip stealing

24

vary widely among the housekeepers and, therefore, the Court cannot conclude that the Named Plaintiffs' conversion claims are typical of those of the potential class members.

Defendants' arguments that typicality is not satisfied as to any of Plaintiffs' claims are unavailing. First, to the extent that some putative class members have purportedly denied the Named Plaintiffs' substantive allegations, those individuals are free to opt out of the class. See Fed. R. Civ. P. 23(c)(2)(B)(v). More importantly, however, the declarations upon which Defendants rely for the proposition that those individuals have "denied" the allegations are not as explicit as Defendants claim.

Second, the case that Defendants cite for the proposition that typicality is lacking—Amos v. Geico Corp., No. 06-CV-1281 (PJS/RLE), 2008 WL 4425370 (D. Minn. Sept. 24, 2008)—is inapposite. In Amos, the plaintiffs sought class certification of their 42 U.S.C. § 1981 claim, in which they alleged that the insurance company defendants discriminated against African-Americans by using underwriting practices that favored customers who had college degrees and who worked in certain white-collar occupations. Id. at *1. The court concluded that both commonality and typicality were lacking because the plaintiffs could have been in any one of hundreds of occupations that were at issue, and "[w]ith respect to each one of those hundreds of occupations, one or more people . . . made one or more decisions during one or more years to treat members of that occupation less favorably." Id. at *9. Unlike the plaintiffs in Amos, the putative class members in this case were all housekeepers who had the same duties and reported to the same supervisor and are seeking redress of the same off-the-clock work and rest

and meal break injuries.  Thus, with the exception of conversion, the Named Plaintiffs'

claims are typical of those of the putative class members.

### 4.      Adequacy of representation

The parties also dispute whether the Named Plaintiffs and their counsel are

adequate class representatives.  Rule 23(a)(4) focuses on "whether the class

representatives will vigorously prosecute the interests of the class through qualified

counsel" and whether "the class representatives have common interests with the members

of the class."  Paxton, 688 F.2d at 562–63 (citations omitted).  Thus, this inquiry "serves

to uncover conflicts of interest between named parties and the class they seek to

represent."  Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 625 (1997) (citation

omitted).

### a.      The Named Plaintiffs

Defendants raise three arguments regarding the adequacy of the Named Plaintiffs

to act as class representatives.  These arguments lack merit.  First, Defendants argue that

the Named Plaintiffs' deposition testimony reflects basic misunderstandings as to the

nature and scope of their claims.  (Defs.' Rule 23 Opp. at 36.)  For example, Defendants

point to deposition testimony from Rodriguez indicating that she believed her claims

included age discrimination, and from Cruz stating that she believed her claims included

one for inadequate holiday pay.  (Id.)  Defendants also contend that none of the Named

Plaintiffs knew that they had asserted a claim for national origin discrimination.  (Id.)

However, while Rodriguez and Cruz may have thought that there were additional claims

included in their lawsuit, their testimony regarding the nature of the claims that are

26

included demonstrates a clear understanding that those claims are about off-the-clock work, breaks, and tip-stealing.  (See, e.g., Madia Rule 23 Decl., Ex. B (Cruz Dep. 41:23–42:22), Ex. C (Rodriguez Dep. 44:22–46:5, 122:9-12)).)  Moreover, as discussed in this Court's Summary Judgment Order, Plaintiffs' counsel conceded that Plaintiffs do not have a claim for national origin discrimination.  (See SJ Order at 41–42.)  Accordingly, it is not surprising that none of the Named Plaintiffs thought that it was a part of their lawsuit.

Second, Defendants argue that there is a conflict of interest between the Named Plaintiffs and putative class member Gomez because Gomez was a supervisor who is accused in certain testimony of engaging in unlawful employment practices.  (Defs.' Rule 23 Opp. at 36.)  However, Gomez is not named as a defendant, and she was also a housekeeper whose interests align with the Named Plaintiffs' interests.  Defendants have not identified why her status as a supervisor would preclude the Named Plaintiffs from vigorously representing the interests of the class.  Moreover, Gomez could choose to opt out of the class.  See Fed. R. Civ. P. 23(c)(2)(B)(v).

Finally, Defendants assert that Named Plaintiff Rodriguez's credibility has been called into question by inconsistencies in her testimony.  (Defs.' Rule 23 Opp. at 36–37.)  However, although Defendants claim that inconsistencies in testimony that go to a critical matter are sufficient to render a proposed class representative inadequate, they fail to explain how any particular statements of Rodriguez are so inconsistent as to put her credibility in question.  (See id.)

Thus, Defendants have failed to raise an issue sufficient to call into question the ability of the Named Plaintiffs to fairly and adequately protect the interests of the proposed class.  And, it appears from the record that the Named Plaintiffs have each diligently participated in this litigation.  Therefore, the Court finds that the Named Plaintiffs are adequate class representatives.

**b.     Class counsel**

As for Plaintiffs' counsel, the Court must consider:

(i)     the work counsel has done in identifying or investigating potential claims in the action;

(ii)    counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

(iii)   counsel's knowledge of the applicable law; and

(iv)    the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A).  In challenging Mr. Madia's and Mr. Newville's appointment as class counsel, Defendants rely on the fact that neither of those attorneys has previously been certified under Rule 23 as class counsel and the fact that the depositions they took in this case lasted less than three hours.  (Defs.' Rule 23 Opp. at 38–39.)

The Court finds these reasons to be insufficient to disqualify Mr. Madia and Mr. Newville as class counsel in this case.  First, although Plaintiffs' counsel may not have been certified as class counsel before, Mr. Madia has 13 years of experience as an attorney and has participated in approximately thirty jury trials, and his law firm (Madia Law LLC) specializes in employment and civil rights litigation.  (Madia Rule 23 Decl. ¶ 3.)  Mr. Newville is also an employment and civil rights litigator who works for Madia

Law LLC and serves on the board of directors for the Minnesota chapter of the National

Employment Lawyers Association. (Id. ¶ 4.) In addition, Plaintiffs have identified four

cases in which Madia Law LLC has acted as plaintiffs' counsel in collective or class

actions. (See Pls.' Rule 23 Mem. at 22–23.) Second, the length of a deposition is not

necessarily indicative of the skill or diligence of the attorney taking the deposition, and

Plaintiffs have identified no specific reason to question the skill or diligence of Plaintiffs'

counsel in taking those depositions. Third, it appears from the record and the motion

practice before this Court that Plaintiffs' counsel has been diligent in identifying and

investigating potential claims and has committed appropriate resources to this litigation.

Based on this information, the Court cannot conclude that Plaintiffs' counsel is not

qualified to represent the class. Accordingly, the Court finds that the Named Plaintiffs

and their attorneys are adequate class representatives under Rule 23(a)(4).

### 5. Superiority

Because the Rule 23(b)(3) predominance inquiry was conducted above, the only

remaining consideration under Rule 23(b)(3) is whether a class action would be a

superior method of adjudicating this controversy. Plaintiffs contend that a class action is

the superior method of adjudication of this matter because it would be inefficient and

uneconomical to proceed in 67 individual lawsuits that would each result in relatively

small recoveries, the putative class members have little interest in controlling separate

actions given their vulnerability, there is no other pending litigation in this matter, all of

the alleged unlawful practices—and most of the putative class members—are located in

this forum, and there are no foreseeable difficulties in managing the dispute as a class

action in light of the generalized proof available to substantiate the claims.  (See Pls.'
Rule 23 Mem. at 25–28.)

In opposition, Defendants assert that a class action is not a superior method of
adjudicating this case because the litigation will become a series of mini-trials.  (See
Defs.' Rule 23 Opp. at 40.)  In other words, Defendants again rely on their contention
that there is no common evidence that supports Plaintiffs' claims.  (See id.)  Defendants
also assert that Plaintiffs have demonstrated an inability to manage even the FLSA action
because they were unable to locate a particular opt-in plaintiff for several weeks.  (Id. at
41–42.)

The Court agrees with Plaintiffs that a class action is the superior method of
adjudicating Plaintiffs' breach of contract, § 181.101, and MFLSA claims—at least with
respect to the question of Defendants' liability.  First, it is likely that the putative class
members would have little interest in pursuing individual actions given that the cost of
doing so would likely be greater than the small potential recovery.  Second, this lawsuit
appears to be the only litigation concerning this controversy and, as Plaintiffs note, this is
a convenient forum because most of the major players are located here and all of the
alleged conduct occurred here.  Finally, there do not appear to be any major difficulties
with maintaining a class action.  As discussed herein, the Court has determined that
Plaintiffs' claims do present common questions that can be answered through common
evidence.  Accordingly, adjudication through a class action will lead to a more efficient
use of judicial resources.  And, it appears that the parties were ultimately able to locate

the opt-in plaintiff at issue.  Therefore, Rule 23(b)(3)'s superiority requirement is satisfied.

In conclusion, the Court finds that class certification is not appropriate as to Plaintiffs' conversion claim, but that class certification of a liability-only class as to Plaintiffs' breach of contract, § 181.101, and MFLSA claims is appropriate.  If there is a finding of liability as to any of those claims, then the Court will schedule further briefing on how to proceed with respect to damages.

### 6.      Class Definition

The Court finds that Plaintiffs' state law claims—with the exception of their conversion claim—may properly be resolved in a class action and, therefore, that certification of a class is appropriate.  Accordingly, the Court certifies the following liability-only Rule 23 class with respect to Plaintiffs' breach of contract, § 181.101, and MFLSA claims:

> All current and former housekeepers who work(ed) for Fairfield Inn & Suites Minneapolis Bloomington from April 15, 2011 to present.

Because this class is certified under Rule 23(b)(3), "the [C]ourt must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  The Court directs the parties to submit a joint proposed notice to the Court within seven days of the date of this Order.  Because these potential Rule 23 class members already received notice of the FLSA action, the Rule 23 notice should explain why they are receiving a second notice and should explain the opt-out procedure that

applies to the state law claims.  If the parties are unable to agree on the content of the notice, they shall each submit a proposed notice, together with briefing not to exceed eight pages per side, within fourteen days of the date of this Order.

### B.       Defendants' Motion to Decertify the FLSA Class

In Count I, Plaintiffs allege that Defendants violated the FLSA by requiring them to work off the clock and, accordingly, failing to pay them at least minimum wage for all hours worked and overtime compensation for hours worked in excess of forty.  (See First Am. Compl. ¶¶ 64–65.)  As discussed above, the Magistrate Judge conditionally certified a FLSA class, which consists of the Named Plaintiffs and seven Opt-in Plaintiffs. Defendants seek decertification of this class.

The FLSA authorizes employees to bring a collective action against employers for violations of FLSA's overtime and minimum wage provisions.  29 U.S.C. § 216(b).  To proceed with a collective action, plaintiffs must demonstrate that they are similarly situated to the proposed class members.  Brennan v. Qwest Commc'ns Int'l, Inc., Civ. No. 07-2024 (ADM/JSM), 2009 WL 1586721, at *2 (D. Minn. June 4, 2009). Determining whether plaintiffs are similarly situated to the proposed class requires a two-step inquiry.  See Burch v. Qwest Commc'ns Int'l, Inc., 500 F. Supp. 2d 1181, 1186 (D. Minn. 2007) (citations omitted).  "First, the court determines whether the class should be conditionally certified for notification and discovery purposes."  Id. (citation and internal quotation marks omitted).  "[T]he plaintiffs need only establish [at that time] a colorable basis for their claim that the putative class members were the victims of a single decision, policy, or plan."  Id. (citation and internal quotation marks omitted).  Unlike a Rule 23

class action, no employee is a party to a FLSA collective action unless he files with the Court a written consent to join the action. Smith v. Heartland Auto. Servs., Inc., 404 F. Supp. 2d 1144, 1149 (D. Minn. 2005) (citation omitted).

If certification is granted, and once discovery has progressed, the party opposing the class action may move to decertify the class. See Burch, 500 F. Supp. 2d at 1186. "If a class is decertified, opt-in class members are dismissed without prejudice, and the case proceeds only in the putative class representatives' individual capacities." Keef v. M.A. Mortenson Co., No. 07-CV-3915 (JMR/FLN), 2008 WL 3166302, at *2 (D. Minn. Aug. 4, 2008). At this stage, a court will again analyze whether the plaintiffs are similarly situated to the proposed FLSA class and will consider the following factors: "'(1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations.'" Bouaphakeo, 765 F.3d at 796 (quoting Thiessen v. Gen. Elec. Capital Corp., 267 F.3d 1095, 1103 (10th Cir. 2001)). Although the named plaintiffs bear the burden of establishing that they are similarly situated, "[that] burden is not so rigorous that they must demonstrate their positions are identical to those of the opt-in plaintiffs." Nerland, 564 F. Supp. 2d at 1018. "Rather, plaintiffs 'need show only that their positions are similar.'" Id. (quoting Smith, 404 F. Supp. 2d at 1149). In addition, whether to decertify a collective action under § 216(b) is within the Court's discretion. Id.

### 1.      Factual and employment settings

Defendants first assert that a collective action is inappropriate for Plaintiffs' FLSA claims because determining whether Defendants are subject to liability for overtime or minimum wage violations would require "a highly individualized inquiry as to each class member's circumstances every day of every week." (Defs.' Decert. Mem. at 3.)  More specifically, Defendants argue that a finding of liability on Plaintiffs' minimum wage claims would require determining whether each class member worked off the clock in a given week, analyzing the hours recorded and wages paid to each class member, and calculating the effective hourly rate paid to each class member after adding the off-the-clock hours.  (See id. at 20–24.)  Defendants assert that—given the FLSA Plaintiffs' differing hourly rates, different schedules, and varying amounts of alleged off-the-clock work—liability cannot be determined on a classwide basis.  (See id.)  Similarly, regarding Plaintiffs' overtime claims, Defendants argue that decertification is appropriate because the number of hours worked by each class member varied on a daily basis, there are numerous workweeks in which class members will not be able to demonstrate that they worked overtime, and the amount of alleged off-the-clock work varies from day to day and class member to class member.  (See id. at 24–30.)

The FLSA Plaintiffs, on the other hand, argue that decertification is not appropriate because they worked at the same job, at the same location, and under the same supervisor, and because they made similar allegations regarding their off-the-clock work.  (Pls.' Decert. Opp. at 11–12.)  Moreover, Plaintiffs assert, the issues raised by Defendants relate to damages and have no bearing on the questions that are pertinent to

liability—i.e., whether Defendants' housekeepers worked off the clock and whether

Defendants knew or should have known that its housekeepers were working off the clock.

(Id. at 12–13.)  According to Plaintiffs, if these questions are answered in the affirmative,

then Defendants' own records make it clear that they violated the FLSA's overtime and

minimum wage provisions.  (See id. at 14–17.)

The Court finds that the factual and employment settings factor supports denial of

Defendants' Decertification Motion.  There is no dispute that "all class members worked

at the same location, . . . had the same job title, and . . . allege that they performed off-

the-clock work."  (Defs.' Reply Mem. in Supp. of Mot. to Decertify the Conditionally

Certified Class [Doc. No. 71] ("Defs.' Decert. Reply"), at 1.)  Defendants argue only that

the "individualized inquiries" render class certification inappropriate.  But, the types of

discrepancies alleged—e.g., the amount of time worked off the clock on a given day or

the time that a person arrived at work or left after work—have repeatedly been held by

judges in this District to be inconsequential.

For example, in Brennan v. Qwest Communications Int'l, Inc., Qwest sought

decertification of a class of network technicians who claimed that Qwest's productivity

expectations forced them to work off the clock before and after their shifts, in violation of

the FLSA.  2009 WL 1586721, at *2.  Qwest argued that the plaintiffs were not similarly

situated because some came to work earlier than others or finished their work earlier than

others, and some completed off-the-clock work at the end of their shifts rather than at the

beginning.  Id. at *3.  The court determined that "these discrepancies in the particular

manner of how network technicians perform substantially similar tasks during the day are

inconsequential for purposes of the question of decertification," and that "the more

important issue in evaluating disparities in the factual and employment settings is

whether or not the named plaintiffs and opt-in plaintiffs are all subject to the same basic

requirements and policies implemented by Qwest." Id. at *3–4.  Based on the named and

opt-in plaintiffs' declarations stating that they had to work off the clock in order to

comply with the productivity requirements, the court determined that they shared similar

factual and employment settings because each was subject to the same productivity

requirements.  Id. at *5.

Similarly, in Frank v. Gold'n Plump Poultry, Inc., Gold'n Plump sought to

decertify a class of its current and former employees who alleged that Gold'n Plump

violated the FLSA by failing to pay them for time spent donning and doffing, sanitizing

clothing and equipment, and walking to their work stations.  No. 04-CV-1018 (PJS/RLE),

2007 WL 2780504, at *1 (D. Minn. Sept. 24, 2007).  Gold'n Plump argued that the

plaintiffs were not similarly situated because some of their supervisors started paying

them five minutes before their shifts began and others did not, and because there was

variation in what the plaintiffs had to don and doff and how the different plants were

configured.  Id. at *4.  The court rejected Gold'n Plump's arguments.  As for the differing

pay practices, the court held:

> The varying practices of the supervisors may mean that some employees
> have less damages than others—or, conceivably, that some employees have
> no damages at all.  But it does not detract from the point that Gold'n Plump
> has not adopted a corporate policy requiring that employees be paid for
> donning and doffing time.

Id.  As for the remaining differences, the court stated:

36

Gold'n Plump exaggerates the factual differences among employees on various shifts and in different departments. If one zooms in close enough on anything, differences will abound; even for a single employee doing a single job, the amount of time that she spends donning and doffing on Monday will differ, at least minutely, from the amount of time that she spends donning and doffing on Tuesday. But plaintiffs' claims need to be considered at a higher level of abstraction.

Id.

The cases relied upon by Defendants are not to the contrary. In Burch v. Qwest Communications Int'l, Inc., Qwest sought decertification of a class of its current and former employees who alleged that they were not paid for time spent performing work tasks before and after their shifts. 677 F. Supp. 2d 1101, 1107, 1113 (D. Minn. 2009). Those tasks included booting up and shutting down their computers, calling customers, reading emails, and completing sales and service orders. Id. at 1115–16. The court determined that a collective action was appropriate as to the claims of FLSA violations based on the booting up and shutting down of computers, but not as to the "hodgepodge of other uncompensated activities." Id. at 1122. While the plaintiffs had presented evidence of a widespread Qwest policy requiring off-the-clock work for booting up and shutting down computers, they had not done so in regard to the other alleged off-the-clock activities. Id. at 1115. Rather, the testimony "widely" varied among the plaintiffs as to whether and how often they had performed any of the latter activities. Id. In addition, the variation in time allegedly spent booting up and shutting down the computers was "not significant," while the time allegedly spent on the various other tasks "varie[d] wildly among Plaintiffs." Id. at 1116–17.

37

And, in Holaway v. Stratasys, Inc., Stratasys sought to decertify a class of three employees who alleged that they were improperly categorized as exempt and were not compensated for overtime.  Civ. No. 12-998 (PAM/JSM), 2013 WL 5787476, at *1 (D. Minn. Oct. 28, 2013).  The court determined that the factual and employment settings factor weighed in favor of decertification because whether each plaintiff was exempt "require[ed] an analysis of factors such as job independence, something that varied widely among these three Plaintiffs."  Id. at *2.  Indeed, "Stratasys ha[d] proffered evidence that the three Plaintiffs worked very differently[,] . . . had different educational backgrounds, served different territories, and approached their duties in different ways." Id.

The FLSA Plaintiffs' allegations and evidence in this case—i.e., that they were all subject to the same policy of having to work off the clock both before and after their shifts—are similar to those of the plaintiffs who were permitted to proceed as a FLSA class in Brennan, Frank, and Burch.  This is not a case like Holaway, where the central issue was dependent upon evidence that was completely uncommon as between the plaintiffs.  And, although there may be discrepancies in the amount of time each Plaintiff worked off the clock on a given day, or when, those discrepancies are inconsequential.

Moreover, as noted in Frank, the fact that some FLSA Plaintiffs ultimately may not be entitled to any damages does not preclude the collective adjudication of the central issues in this case—i.e., whether the FLSA Plaintiffs worked off the clock and whether Defendants knew or had reason to know that Plaintiffs were working off the clock.  See also Bouaphakeo, 765 F.3d at 797 (rejecting the defendant's argument that the FLSA

class should be decertified because some members did not work overtime).  Indeed,

"[t]he central question at issue in the decertification motion is whether the named

plaintiffs and opt-in plaintiffs are similarly situated, not whether the FLSA was violated."

Brennan, 2009 WL 1586721, at *5 (emphasis added).   Nor does the fact that the

individual circumstances of the FLSA Plaintiffs may need to be considered in order to

calculate damages render collective adjudication of liability improper.  "Individual

damage calculations . . . are permissible if they do not 'overwhelm questions common to

the class.'"  Bouaphakeo, 765 F.3d at 798 n.5 (quoting Comcast Corp. v. Behrend, 133 S.

Ct. 1426, 1433 (2013)).  Just as the Court finds that the individual inquiries are not

significant enough to preclude a collective action, the Court also finds that those

individual inquiries as they relate to the calculation of damages do not overwhelm the

questions that are common to the class.  For these reasons, the factual and employment

settings factor weighs in favor of trying the FLSA Plaintiffs' claims together.

### 2.      Available defenses

Defendants next assert that a collective action is improper because they have

individualized defenses as to the claims of many of the class members.  (Defs.' Decert.

Mem. at 3.)  In particular, Defendants contend that they will raise the following five

defenses:  estoppel as to those class members who acknowledged receipt of Defendants'

timekeeping procedures and used them at some point to report off-the-clock work, (see

id. at 31–32); insufficient proof of hours worked off the clock, (see id. at 32–33); lack of

knowledge that FLSA Plaintiff Rodriguez performed off-the-clock work prior to her shift,

(see id. at 33–34); ineligibility of Gomez and Collins to participate, (see id. at 34–35); and statute of limitations based on lack of willfulness, (see id. at 35).

The Court finds that most, if not all, of these defenses are properly treated on a collective basis.  First, "estoppel provides an available affirmative defense when the employee affirmatively misleads the employer regarding the number of hours worked and the employer has no knowledge of the employee's actual hours."  Robertson v. LTS Mgmt. Servs., LLC, 642 F. Supp. 2d 922, 933 (W.D. Mo. 2008) (citation and internal quotation marks omitted).  Defendants claim that, because they had a process in place for employees to report uncompensated work, they are not liable to those who did not use the system.  (Defs.' Decert. Mem. at 31–32.)  Even assuming this is an accurate statement of the law, resolution of that defense will depend on issues that can be resolved on a collective basis—e.g., the existence of Defendants' reporting process.  Moreover, whether any particular FLSA Plaintiff utilized that process can presumably be determined from Defendants' records and will not render a collective action unmanageable.

Second, the Court already has determined that individual inquiries regarding the number of hours worked by each FLSA Plaintiff do not overwhelm the common issues presented in this action.[5]

---

[5]    In a similar vein, Defendants in their reply brief contend that they will challenge each FLSA Plaintiff's credibility.  (See Defs.' Decert. Reply at 7–10.)  Citing Soderberg v. Naturescape, Inc., Civ. No. 10-3429 (PAM/JJG), 2011 WL 11528148 (D. Minn. Nov. 3, 2011), Defendants argue that such a challenge renders collective treatment inappropriate.  (See id. at 8.)  Although the court in Soderberg held that individualized defenses as to credibility would render collective treatment unmanageable in that case, there were over 80 members in that collective action.  2011 WL 11528148, at **2, 11. This Court does not find that individualized inquiries regarding credibility would

Third, "[a]n employer can be held liable under the FLSA for unauthorized, unpaid overtime when the employer had actual or constructive notice that employees were working off-the-clock." Brennan, 2009 WL 1586721, at *4 (emphasis omitted). "If the circumstances are such that the employer knew or should have known that employees were working off-the-clock, the employer can be held liable for unpaid overtime." Id. (citation and internal quotation marks omitted). Thus, whether Defendants had such notice is a question that pertains to the entire class.

Fourth, although Defendants contend that Gomez does not fit the class definition because she sometimes performed supervisory duties and so was not "a normal housekeeper," (Defs.' Decert. Mem. at 34), there is no delineation in the class definition between "normal" and other housekeepers. And, the only stated basis to remove Opt-in Plaintiff Collins from the class is Named Plaintiff Cruz's testimony that no off-the-clock work was performed after the lawsuit commenced, which was when Collins began working at the Fairfield. (Id. at 35.) The class, however, is defined to include all housekeepers who worked at the Fairfield at any time from April 15, 2011 to the present. Accordingly, Collins fits the definition. If liability is established, Collins simply will not be entitled to any damages if she did not, in fact, work off the clock.

Finally, Defendants admit that the statute of limitations defense it intends to raise against Opt-in Plaintiff Juana Reyes would not bar her entire claim. Accordingly, the fact

---

likewise render a collective action unmanageable in this case.

that she is potentially the only FLSA Plaintiff subject to that defense does not outweigh the fact that the rest of her claim is subject to resolution on a classwide basis.

The Court concludes that most of Defendants' purported individualized defenses are either questions that will be resolved on a classwide basis or are questions that relate to damages rather than to liability.  While some individualized inquiries may be necessary, on balance, this factor does not weigh in favor of decertification.

### 3.     Fairness and procedural considerations

Finally, in assessing the fairness and procedural considerations, the Court looks to the purpose of allowing FLSA actions to proceed as collective actions:  "'(1) reducing the burden on plaintiffs through the pooling of resources, and (2) efficiently resolving common issues of law and fact that arise from the same illegal conduct.'"  Cruz v. Lawson Software, Inc., 764 F. Supp. 2d 1050, 1063 (D. Minn. 2011) (quoting Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233, 1264 (11th Cir. 2008)).  "The FLSA is remedial in nature and therefore 'should be given a broad reading, in favor of coverage.'"  Brennan, 2009 WL 1586721, at *6 (quoting Nerland, 564 F. Supp. 2d at 1025).  "Although concerns for the remedial nature of the FLSA, alone, are insufficient to justify allowing a case to proceed as a collective action, they do suggest that a close call as to whether the plaintiffs are similarly situated should be resolved in favor of certification."  Id. at *7 (citation and internal quotation marks omitted).

Defendants argue that proceeding as a collective action in this case would be inefficient "[g]iven the wide variety of individual issues raised by Plaintiffs' claims and the individualized nature of TMI's defenses."  (Defs.' Decert. Mem. at 36.)  Plaintiffs, on

the other hand, argue that Plaintiffs have relatively small claims that would not justify individual lawsuits and that judicial economy would be served by collectively resolving Plaintiffs' claims, which involve the same allegations, legal issues, witnesses, and evidence. (Pls.' Decert. Opp. at 23.)

The Court agrees with Plaintiffs.  As discussed above, the Court has concluded that the main issues in this case are susceptible to classwide resolution.  Accordingly, a collective action that could resolve the FLSA Plaintiffs' claims in one proceeding will be a more efficient means of resolving those claims than to proceed in individual trials and will serve the interests of judicial economy.  Moreover, it appears that the FLSA Plaintiffs have relatively small claims, and so it would be impractical for them to pursue their claims individually and "decertifying the action could have the effect of contravening the remedial nature of the FLSA."  Brennan, 2009 WL 1586721, at *7. Accordingly, this final factor weighs in favor of allowing this case to proceed as a collective action.

Based on its analysis of all three factors, the Court finds that the Named and Opt-in FLSA Plaintiffs are similarly situated for purposes of pursing their claims in a collective action.  "And to the extent that the question presents a close call, concerns for the purposes of the FLSA as a remedial statute tip the balance decidedly against decertification."  Id.  Defendants' Motion is, therefore, denied.

## IV.    ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED THAT:**

1.    Plaintiffs' Motion for Rule 23 Class Certification [Doc. No. 53] is **GRANTED IN PART AND DENIED IN PART**.

2.    The Court certifies the following Rule 23 class:

All current and former housekeepers who work(ed) for Fairfield Inn & Suites Minneapolis Bloomington from April 15, 2011 to present.

3.    This class is certified with respect to the issue of liability as to Plaintiffs' MFLSA, breach of contract, and Minnesota Statutes § 181.101 claims.

4.    Within seven (7) days of the date of this Order, the parties shall submit a joint proposed notice to the Court.  If the parties are unable to agree on the content of the notice, the parties shall each submit a proposed notice, together with briefing not to exceed eight (8) pages per side, within fourteen (14) days of the date of this Order.

5.    The Named Plaintiffs are appointed as class representatives.

6.    Plaintiffs' counsel, J. Ashwin Madia and Joshua A. Newville of Madia Law LLC, are appointed as class counsel.

7.    Defendants' Motion to Decertify the Conditionally Certified Class [Doc. No. 60] is **DENIED**.

8.    As discussed herein, this case will proceed in two phases:  liability and damages.  This Court has set this matter for trial on Monday, December 14, 2015, at which time trial will commence in the liability phase.  If liability is established on any of Plaintiffs' claims, then the Court will schedule further briefing on how to proceed with respect to the damages phase.

Dated:  October 30, 2015                    s/Susan Richard Nelson
                                            SUSAN RICHARD NELSON
                                            United States District Judge